# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUSAN WILSON,                        )
as Administrator of the             )
Estate of MATTHEW BRIAN WILSON,     )
                                     )
          Plaintiff,                )
                                     )
     v.                              )          1:24cv219
                                     )
DAVIDSON COUNTY                     )
SHERIFF'S OFFICE, et al.,           )
                                     )
          Defendants.               )

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on (i) "Plaintiff's Motion to Seal" (Docket Entry 59) (the "First Motion");[1] (ii) "Defendants IMS Correctional Healthcare, LLC, Michelle Madden, LPN and Celia Entwistle, M.D.'s Motion to Seal Certain Exhibits in Support of Their Motion for Summary Judgment" (Docket Entry 69) (the "Second Motion"); (iii) the "Motion to Seal" (Docket Entry 74) (the "Third Motion") filed by "Davidson County, Sheriff Richie T. Simmons, Officer Logan Peters, and Officer Jonathan Lambeth" (id. at 1)[2] (collectively, the "Prison Defendants"); (iv) "Defendants IMS Correctional Healthcare, LLC, Michelle Madden, LPN and Celia Entwistle, M.D.'s Motion to Seal" (Docket Entry 85) (the "Fourth Motion"); and (v) "Plaintiff's Motion to Seal" (Docket Entry 99)

---

1    For legibility reasons, this Opinion omits bold, underscored, and all-cap font in the titles of court filings.

2    Docket Entry page citations utilize the CM/ECF footer's pagination.

(the "Fifth Motion") (collectively, the "Sealing Motions"). For the reasons that follow, the Court will deny the Sealing Motions.

## BACKGROUND

Alleging various claims related to "the wrongful death of Matthew Wilson as a result of injuries sustained at the Davidson County Jail" (Docket Entry 9 at 1), Susan Wilson (the "Plaintiff"), Matthew Wilson's mother and administrator of his estate (see id.), sued, as relevant here, IMS Correctional Healthcare, LLC ("IMS"), Celia Entwistle, MD, Michelle Madden, LPN (collectively, the "Medical Defendants"), and Prison Defendants. (See id. at 1-30.) The parties subsequently filed a "Joint Rule 5.5 Report" (Docket Entry 30) (the "Report") regarding "the potential need for filing documents under seal" (id. at 1). Per the Report, "[t]he Parties agree[d] to use the default procedures of [Local Rule] 5.4(c) for the filing of sealed documents." (Id. at 2.) The Report further specified that, "if the party filing the motion to seal is not the party claiming confidentiality," inter alia, "the party claiming confidentiality must file supporting materials required by [Local Rule] 5.4(c)(3) within fourteen (14) days of the motion to seal." (Id.) The Court adopted the Report without modification. (See Text Order dated June 12, 2024.)

Thereafter, the parties submitted a "Consent Protective Order" (Docket Entry 36) (at times, the "Protective Order"), explaining, inter alia:

2

Documents and information have been and will be sought, produced, or exhibited by and among the Parties to the above captioned proceeding which relate to criminal investigation materials, law enforcement agency and jail security records, video recordings, audio recordings, and law enforcement agency body worn camera footage made confidential pursuant to N.C.[ Gen. Stat.] §§ 132-1.4, 132-1.4A, and 132-1.7, and personnel records and matters that may be disclosed only under court order, pursuant to N.C. Gen. Stat. [§§] 153A-98(c) and 160A-168. The Parties have sought such an order so as to comply with the applicable law and to protect the safety, security, and integrity of the Parties.

This [Protective] Order governs the handling and disclosure of all materials produced, given, or filed herein by the parties and designated as "CONFIDENTIAL." For purposes of this [Protective] Order, CONFIDENTIAL INFORMATION includes, but is not limited to, confidential personnel information pursuant to N.C. Gen. Stat. [§§] 153A-98(c) and 160A-168, confidential information regarding criminal investigations pursuant to N.C. Gen. Stat. [§§] 132-1.4 and 132-1.7, law enforcement body camera video recordings and audio recordings pursuant to § 132-1.4A, and sensitive public security information pursuant to N.C. Gen. Stat. [§ ]132-1.7.

(Docket Entry 36 at 1-2 (all-cap font in original).)  Per the Protective Order, "[a]ny confidential information submitted to the Court in connection with a motion or other proceeding within the purview of this action, and marked [as 'CONFIDENTIAL'], shall be filed under seal consistent with Local Rules 5.4 and 5.5" (id. at 4) and "[a]ny party seeking to file a document under seal must possess a good faith basis to believe that the specific documents sought to be filed under seal satisfy the applicable test for filing the document under seal, notwithstanding the confidentiality of the document" (id.).

3

After discovery closed, the parties filed cross-motions for summary judgment. (See Text Order dated Apr. 23, 2025 (establishing discovery deadline of September 16, 2025); Docket Entries 56, 66, 72.) The parties also filed the Sealing Motions, seeking to seal exhibits and briefs in support of their respective summary judgment positions. (See Docket Entries 59, 69, 74, 85, 99.) In this regard, the First Motion states:

"In support of Plaintiff's Motion for Partial Summary Judgment, Plaintiff needs to file certain documents that have been designated as confidential by Defendant IMS." (Docket Entry 59 at 1.) "Plaintiff is not claiming confidentiality. Defendant IMS will be responsible for filing [Local Rule] 5.4(c)(3) materials to support the sealed filing." (Id.) "The confidential documents include a four-page excerpt of IMS policies and procedures. One of the pages is a title page and the other three pages are substantive policies and procedures which are highly relevant to Plaintiff's claims and Motion for Partial Summary Judgment." (Id. at 2.) "The above-described documents appear as Exhibit 9 to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment." (Id. (underscoring in original).) "Defendant IMS designated 120 pages of policies, procedures, and protocols as confidential. Plaintiff selected only 4 pages out of 120 in an effort to limit the need for sealing." (Id.) "Counsel for Plaintiff conferred with counsel for IMS to discuss narrowing the

4

claim of confidentiality."  (Id.)  "Plaintiff's proposal was rejected, necessitating the filing of th[e First Motion]."  (Id.)

Finally, the First Motion states:

Pursuant to Local Rule 5.4(c)(8) . . ., Plaintiff is filing two sets of its Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment [(the "Summary Judgment Brief")] and corresponding Exhibits — one set filed publicly with the confidential information redacted, and one set filed under temporary seal, with the confidential information highlighted . . . . Plaintiff's Motion for Partial Summary Judgment is only filed publicly because it does not disclose any of the above-described documents or information designated as confidential by Defendant IMS.

(Id.)

IMS responded in support of the First Motion, asking the Court to "maintain the non-redacted version of its policies and procedures under seal" (Docket Entry 83 (the "Response") at 3) "to protect IMS's business interests" (id. (bold font omitted)). According to the Response, "[t]he [First Motion] is limited to the title page and three pages of policies" (id. at 4) found in Plaintiff's Exhibit 9 (see id. at 2).  (See also id. ("Plaintiff submitted four pages of IMS's policies and procedures[] . . . . Of the four pages, one page is a title page, and the other three pages are IMS's substantive policies and procedures.").)[3]  Recognizing that "[t]he [United States Court of Appeals for the] Fourth Circuit

---

3  Despite the First Motion's focus on these policies (see Docket Entry 59 at 1-4 (limiting description and discussion to policy excerpts in Exhibit 9)), Plaintiff also submitted a redacted version of her Summary Judgment Brief (see, e.g., Docket Entry 57 at 2).

5

has squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion" (id. at 5 (internal quotation marks omitted)), the Response asserts:

> It is well-established that where records contain "sources of business information that might harm a litigant's competitive standing," the court may limit public access by sealing such records. Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). IMS has an interest in preserving the confidentiality of its proprietary business information. "The provision of healthcare to community jails is a competitive market, and IMS does not want its competitors to gain a market advantage by having unfettered access to any of its policies and procedures." (Ex. A, Ruppe Aff., ¶ 6). The general public has no need for the precise details of IMS's policies and procedures.
>
> IMS has a significant interest in maintaining the confidentiality of its proprietary policies and procedures, and sealing the documents would allow IMS to preserve its business interests. IMS would be prejudiced by the release of its policies and procedures.

(Docket Entry 83 at 5.)

As support for its sealing request, IMS submitted an affidavit from Rachel Ruppe, its "VP of Operations." (Docket Entry 83-1 (the "Affidavit"), ¶ 2.) As relevant to the Sealing Motions, the Affidavit states:

"The IMS policies filed by . . . Plaintiff under seal in support of her Motion for Partial Summary Judgment are IMS's proprietary policies and procedures." (Id., ¶ 3.) "The policies at issue were formulated by Comprehensive Correctional Care and adopted by IMS." (Id., ¶ 4.) "The policies are proprietary and

6

produced pursuant to the [Protective Order]." (Id., ¶ 5.) "The provision of healthcare to community jails is a competitive market, and IMS does not want its competitors to gain a market advantage by having unfettered access to any of its policies and procedures." (Id., ¶ 6.) "IMS respectfully requests the Court maintain the policies at issue under seal." (Id., ¶ 7.)

Medical Defendants subsequently filed a motion to seal certain materials that they submitted in opposition to Plaintiff's summary judgment motion. (See Docket Entry 85 at 1-5.) More specifically, through the Fourth Motion, Medical Defendants seek to seal "one screen recording of jail surveillance camera footage" submitted as "Exhibit[] J" to their opposition brief, which video Prison Defendants indicated needed "seal[ing] due to security and safety concerns." (Id. at 2.)[4] The Fourth Motion also seeks to seal by redaction portions of Medical Defendants' opposition brief as well as one exhibit thereto. (See id. at 3.) As justification for this request, the Fourth Motion states only:

> Further, portions of the Medical Defendants'
> Response Brief in Opposition to Plaintiff's Motion for
> Partial Summary Judgment [(the "Opposition Brief")]
> reference policies and a formulary to which IMS claims

---

[4] Although Prison Defendants designated the video as confidential and their counsel "confirmed the need to file the videos under seal due to security and safety concerns" (id.), Prison Defendants did not "file supporting materials required by [Local Rule] 5.4(c)(3) within fourteen (14) days of the [Fourth Motion's filing]" (Docket Entry 30 at 2). (See Docket Entries dated Oct. 20, 2025, to Nov. 17, 2025 (containing such filing for Fifth Motion, but nothing for Fourth Motion).)

7

confidentiality as more fully described in [the Response]. (D.E. 83, 83-1).

Medical Defendants' [Opposition Brief] also references one formulary document that IMS marked as Confidential pursuant to the Protective Order. (D.E. 85-1, Ex. L). Medical Defendants selected only one formulary in an effort to limit the need for sealing.

Pursuant to Local Rule 5.4(c)(8) . . .[,] Medical Defendants are filing two sets of their [Opposition Brief] and Exhibit L. One copy is filed publicly with the confidential information redacted, and one copy is filed under temporary seal, with the confidential information highlighted.

WHEREFORE, . . . Medical Defendants respectfully request that the Court grant the[ Fourth Motion].

(Id. (all-cap font in original) (internal paragraph numbering omitted).)[5]

The remaining Sealing Motions all concern videos submitted in connection with the parties' summary judgment briefing. (See Docket Entries 69, 74, 99.) In the Second Motion, citing Prison Defendants' "security and safety concerns" (Docket Entry 69 at 2), Medical Defendants ask to seal "four screen recordings of jail surveillance camera and law enforcement agency body worn camera videos" that Medical Defendants submitted as exhibits in support of their summary judgment motion (id.). In the Third Motion, Prison Defendants belatedly ask "to seal Exhibit 15 in support of Plaintiff's Partial Motion for Summary Judgment" (Docket Entry 74

---

5 The "formulary document" (id.) that Medical Defendants seek to seal differs from the policy excerpts that Plaintiff submitted in support of her summary judgment motion. (Compare Docket Entry 60-9 at 1-4, with Docket Entry 88-1 at 66-67.)

8

at 1), which contains "video footage [that] was not filed under seal" when Plaintiff filed her motion (<u>id.</u> at 3). In the Fifth Motion, Plaintiff asks to "seal certain law enforcement video footage exhibits" (Docket Entry 99 at 1) filed in support of her summary judgment reply (<u>see</u> <u>id.</u> at 1-2). As justification for these sealing requests, Prison Defendants assert:

> On August 26, 2024, the Court signed a Consent Protective Order governing the disclosure of jail security records, video recordings, audio recordings, and law enforcement agency body worn camera footage made confidential pursuant to N.C.G.S. §§ 132-1.4, 132-1.4A, and 132-1.7. (D.E. 36). The Protective Order was sought in order to keep sensitive public security information confidential, as required by N.C.G.S. § 132-1.7, and to ensure that statutory confidentiality, under N.C.G.S. §§ 132-1.4 and 132-1.4A, was maintained. Pursuant to Local Rule 5.4, this Court has express authority to seal materials contained in the record. [Prison] Defendants need only demonstrate "the necessity and propriety" of sealing the document at issue, and the Court, in its discretion, may seal such document if deemed appropriate. *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (noting that the trial court has supervisory power over its own records and may, in its discretion, seal documents if the public's right of access is outweighed by competing interest).

> The footage manually filed contains sensitive security information about the Davidson County Detention Center. For obvious security reasons, detention center layout, camera locations, where cameras are facing, and what they depict, cannot and should not be information readily available to the public. The evidence in question is legally privileged and not subject to public disclosure. *See* N.C.G.S. §§ 132-1.4, 132-1.4A, and 132-1.7.

> [Prison] Defendants request only that the Court seal documents already made confidential pursuant [to] this Court's Protective Order so that the parties can present them to the Court without violating the Protective Order and applicable North Carolina statutes. There is no

9

Case 1:24-cv-00219-LAF-LPA    Document 118    Filed 05/28/26    Page 9 of 22

common law or First Amendment presumption to access these confidential materials, and the interest in keeping these records private outweighs any competing interest for access.

(Docket Entry 84 at 2-3; Docket Entry 106 at 2-3; <u>see also</u> Docket Entry 74 at 2-3.)

## **DISCUSSION**

### **I. Relevant Standards**

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." <u>Nixon</u>, 435 U.S. at 597. "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." <u>Virginia Dep't of State Police v. Washington Post</u>, 386 F.3d 567, 575 (4th Cir. 2004). "[T]he common law presumption in favor of access attaches to all 'judicial records and documents,'" but "the First Amendment guarantee of access has been extended only to particular judicial records and documents." <u>Stone v. University of Md. Med. Sys. Corp.</u>, 855 F.2d 178, 180 (4th Cir. 1988) (quoting <u>Nixon</u>, 435 U.S. at 597).

"When presented with a request to seal judicial records," the Court begins by "determin[ing] the source of the right of access with respect to each document," as "only then can it accurately weigh the competing interests at stake." <u>Washington Post</u>, 386 F.3d at 576 (internal quotation marks and brackets omitted). "Th[e common-law] presumption of access . . . can be rebutted if

10

countervailing interests heavily outweigh the public interests in access." Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988). The relevant factors include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight, 743 F.2d at 235. Under the more stringent first-amendment standard, the Court may seal material "only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest." Stone, 855 F.2d at 180. "The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003).

Under either standard, the Court must then evaluate the competing interests via the following approach. First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Washington Post, 386 F.3d at 576.[6] Next, "it must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and

---

    6    "[D]ocketing [the request] reasonably in advance of deciding the issue" satisfies this notice obligation. In re Knight, 743 F.2d at 235.

11

the reasons for rejecting alternatives to sealing." <u>Id.</u>
"Adherence to this procedure serves to ensure that the decision to
seal materials will not be made lightly and that it will be subject
to meaningful appellate review." <u>Id.</u>; <u>see also</u> <u>Stone</u>, 855 F.2d at
182 ("The public's right of access to judicial records and
documents may be abrogated only in unusual circumstances. The
procedures mandated by *Knight* ensure that the decision to seal
records will not be made lightly, and make possible meaningful
review of a decision to seal."). This approach also reflects the
reality that "[t]he operations of the courts and the judicial
conduct of judges are matters of utmost public concern," <u>Landmark</u>
<u>Commc'ns, Inc. v. Virginia</u>, 435 U.S. 829, 839 (1978), as well as
that "the public's business is best done in public," <u>Cochran v.</u>
<u>Volvo Grp. N. Am., LLC</u>, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).
<u>See also</u> <u>Columbus–America Discovery Grp. v. Atlantic Mut. Ins. Co.</u>,
203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of [court] records,
of course, is necessary in the long run so that the public can
judge the product of the courts in a given case. It is hardly
possible to come to a reasonable conclusion on that score without
knowing the facts of the case.").

The legal framework described above also applies to requests
by a party to file a redacted document, i.e., a document sealed in
part. <u>See</u> <u>Moussaoui</u>, 65 F. App'x at 889 ("As to those documents
subject to a right of access, [the court] must then conduct the

12

appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part."); see also Bethesda Softworks, LLC v. Interplay Ent. Corp., Civ. Action No. 09-2357, 2010 WL 3781660, at *9-10 (D. Md. Sept. 23, 2010) (treating motion to redact transcript as motion to seal). "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." Moussaoui, 65 F. App'x at 888 (citing United States v. Pelton, 696 F. Supp. 156, 159 n. 2 (D. Md. 1986) (noting that court would "carefully compare the redacted version [of a transcript] to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary")).

Moreover, "[w]hen a request to seal pertains to publicly available information, the proponent of that request faces an uphill battle," Danzy v. Coloplast Corp., No. 1:19cv1017, 2022 WL 1591968, at *5 (M.D.N.C. May 19, 2022) (collecting cases denying retroactive sealing requests for publicly available material), as, "once announced to the world, the information lost its secret characteristic," Washington Post, 386 F.3d at 579 (brackets and internal quotation marks omitted). See, e.g., Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08cv918, 2010 WL 1418312, at *10 (M.D.N.C. Apr. 2, 2010) (explaining that, if information was previously disclosed, "any restriction on public access to that same information in this case would serve no purpose"); see also

13

United States v. Loughner, 769 F. Supp. 2d 1188, 1196-97 (D. Ariz. 2011) (noting, in granting motion to unseal, that "neither party has made a convincing case that preventing the possible republication of information that has already become a matter of public knowledge is 'strictly and inescapably necessary' to protect a compelling interest").

Additionally, under this Court's Local Rules,

[n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support, including affidavits or declarations, and with citation to any supporting statutes, case law, or other authority.

M.D.N.C. LR 5.4(c)(3). "If the filing party is the party claiming confidentiality, the [foregoing] materials . . . must be filed with the motion to seal." M.D.N.C. LR 5.4(c)(4)(a). However,

[i]f the filing party is not the party claiming confidentiality or is not claiming it as to all of the items, the filing party should so note, and the party claiming confidentiality must file a response within 14 days of the motion to seal that includes the materials required by [Local Rule] 5.4(c)(3).

M.D.N.C. LR 5.4(c)(4)(b). Failure by a party claiming confidentiality to file materials in support of a request to seal "will result in denial of the motion to seal and unsealing of the materials without further notice." M.D.N.C. LR 5.4(c)(3). Further,

[u]ntil the Court rules on the motion to seal, the underlying documents for which sealing is sought shall be filed under temporary seal. To provide clarity on the

14

> CM/ECF docket, the filing party must file two complete sets of documents, one public and one under temporary seal. The public version must have placeholders or redactions for each item for which sealing is sought. The version filed under temporary seal must be a complete set which includes all exhibits, even those not subject to the motion to seal, and the information sought to be sealed must be highlighted.

M.D.N.C. LR 5.4(c)(8). Finally, "[a] party who files a motion to seal must submit a [Local Rule] 5.4 Checklist and Summary Chart to the assigned district judge's ECF mailbox within 3 business days of the filing." M.D.N.C. LR 5.4(c)(6). The Rule 5.4 Checklist must include, inter alia, a description of each item the motion seeks to seal and the basis for sealing such item. See M.D.N.C. LR 5.4 comment (containing Local Rule 5.4 Checklist).

## II. Analysis

The Sealing Motions seek to seal summary judgment memoranda and exhibits. (See Docket Entries 59, 69, 74, 85, 99.) Accordingly, the First Amendment governs the sealing requests. See Rushford, 846 F.2d at 253 (concluding "that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case"). The Sealing Motions have appeared on the public docket, without opposition thereto, since the fall. (See Docket Entries dated Sept. 18, 2025, to present.) This public docketing satisfies the procedural prerequisites to their consideration. See In re Knight, 743 F.2d at 235. Notably, however, the First Motion and Response contain neither a description of Plaintiff's Summary Judgment Brief

15

nor justify the proposed redactions therein (see Docket Entries 59, 83), in contravention of this Court's Local Rules, see M.D.N.C. LR 5.4(c). Similarly, contrary to the Local Rules, see M.D.N.C. LR 5.4(c)(4), Prison Defendants failed to submit a response in support of the Fourth Motion's request to seal video footage that Prison Defendants deemed confidential (see Docket Entry 85 at 2). (See Docket Entries dated Oct. 20, 2025, to present.) In yet another violation of the Local Rules, the parties did not submit a Rule 5.4 Checklist for any of the Sealing Motions. See M.D.N.C. LR 5.4(c)(6). These failures alone justify denial of the Sealing Motions. See M.D.N.C. LR 83.4(a) (authorizing imposition of sanctions, including "such orders as are just under the circumstances," for failure to comply with Local Rules); see also M.D.N.C. LR 5.4(c)(3) ("Failure to file [Local Rules] 5.4(c)(3) supporting materials will result in denial of the motion to seal and unsealing of the materials without further notice.").

In any event, the parties fail to justify their sealing requests, necessitating their denial. See, e.g., Washington Post, 386 F.3d at 575 ("The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position."). To begin, IMS seeks to seal certain excerpts from its policy manual, "a formulary" (Docket Entry 85 at 3), and references in its Opposition Brief to those policies and formulary. (See Docket

16

Entry 83 at 2-4; Docket Entry 85 at 3.)  Relying entirely on the Affidavit, Medical Defendants urge the Court to seal these materials on the grounds that IMS (i) "claims confidentiality as [to these materials]" (Docket Entry 85 at 3), (ii) "marked [the formulary document and policies] as Confidential pursuant to the Protective Order" (id.; see Docket Entry 83 at 2), and (iii) "has a significant interest in maintaining the confidentiality of its proprietary policies and procedures, and sealing the documents would allow IMS to preserve its business interests" (Docket Entry 83 at 5).  Notably, though, the Affidavit never mentions the formulary document (see Docket Entry 83-1, ¶¶ 1-7), which does not appear in the relevant policy excerpts (see Docket Entry 60-9 at 1-4; cf. Docket Entry 88-1 at 66-67 (containing different font, markings, and formatting)).[7]  Further, the Protective Order itself recognizes that a mere confidentiality designation does not justify sealing an item.  (See Docket Entry 36 at 4 ("Any party seeking to file a document under seal must possess a good-faith basis to believe that the specific documents sought to be filed under seal satisfy the applicable test for filing the document under seal, notwithstanding the confidentiality of the document.").)

---

7    Medical Defendants thus fail to provide the necessary "evidentiary support," M.D.N.C. LR 5.4(c)(3), for their formulary-related sealing requests, warranting their denial, see id. ("Failure to file [Local Rule] 5.4(c)(3) supporting materials will result in denial of the motion to seal and unsealing of the materials without further notice.").

17

Moreover, Medical Defendants offer only generalities regarding the identified material's competitive sensitivity. (See, e.g., Docket Entry 83 at 5 ("IMS has an interest in preserving the confidentiality of its proprietary business information. 'The provision of healthcare to community jails is a competitive market, and IMS does not want its competitors to gain a market advantage by having unfettered access to any of its policies and procedures.'" (quoting Docket Entry 83-1, ¶ 6)).) "However, it is not enough to assert generally that exhibits contain sensitive and confidential business information without supplying specific underlying reasons for the district court to understand how the party's interest reasonably could be affected by the release of such information." Federal Trade Comm'n v. Syngenta Crop Prot. AG, 695 F. Supp. 3d 701, 706 (M.D.N.C. 2023) (brackets and internal quotation marks omitted)). Additionally, unlike, for instance, financial statements, product formulas, and customer lists, nothing about the materials themselves suggests their disclosure could cause appreciable competitive harm. (See Docket Entry 60-9 at 1-4; Docket Entry 88-1 at 66-67.)

Nor have Medical Defendants narrowly tailored their sealing requests. For example, as Medical Defendants explicitly acknowledge, the first page of Plaintiff's submitted exhibit "is a title page" (Docket Entry 83 at 1), yet Medical Defendants maintain that "the only measure that will sufficiently protect IMS's

18

business interests is to seal the policies and procedures," including "the title page" (id. at 4). (See Docket Entry 57-1 at 41-44 (redacting everything other than "CONFIDENTIAL" marking and header outlines).) Medical Defendants' generic assertions of a competitive healthcare market fail to explain the necessity of sealing the "Clinical Policies and Procedures" title (Docket Entry 60-9 at 1), IMS logo, page number, Bates number, blank signature boxes, and revision date on that title page (see id.), information that raises no obvious competitive concerns. Regardless, "[t]he Court is not required to use its own time and resources to narrow a party's designations of confidentiality when the party did not go to that trouble." Sacks Holdings, Inc. v. Grin Nat. USA Ltd., No. 1:23cv1058, 2025 WL 1296159, at *4 (M.D.N.C. May 5, 2025) (denying "request to seal information [that] is not narrowly tailored"). In sum, Medical Defendants have not overcome the first-amendment right of access to the summary judgment memoranda and specified exhibits. See Washington Post, 386 F.3d at 575 ("The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position.").

Prison Defendants also fail to justify sealing the videos submitted as exhibits to the parties' summary judgment briefing. To begin, unlike Medical Defendants, Prison Defendants do not acknowledge the public's first-amendment right of access to these

19

summary judgment exhibits, let alone assert that their sealing "justification[s] rise[] to the level of a compelling government interest under the relevant first-amendment standard," <u>Anderson v. Winston-Salem Police Dep't</u>, No. 1:20cv596, 2022 WL 3586022, at *17 (M.D.N.C. Aug. 22, 2022) (internal quotation marks omitted), <u>recommendation adopted sub nom.</u> <u>Anderson v. Ferguson</u>, No. 1:20cv596, 2022 WL 4237518 (M.D.N.C. Sept. 14, 2022), <u>aff'd</u>, No. 22-7199, 2025 WL 2170729 (4th Cir. July 31, 2025). Instead, Prison Defendants urge the Court to seal the videos because they contain "sensitive security information about the Davidson County Detention Center," were "already made confidential pursuant [to the] Protective Order," and qualify as "legally privileged and not subject to public disclosure" under certain North Carolina statutes. (Docket Entry 106 at 3.)[8] However, Prison Defendants' Protective Order arguments fare no better than Medical Defendants' arguments, as the Protective Order explicitly allows the parties to present confidential material to the Court and recognizes that such

---

[8] Notably, "an attorney's unsworn argument does not constitute evidence," <u>United States v. White</u>, 366 F.3d 291, 300 (4th Cir. 2004), and Prison Defendants provide no evidentiary support for their assertions (<u>see</u> Docket Entries 74, 84, 106), independently justifying denial of their sealing requests, <u>see</u> M.D.N.C. LR 5.4(c)(3); <u>see also</u> <u>Bayer CropScience Inc. v. Syngenta Crop Prot., LLC</u>, No. 1:13cv316, 2013 WL 12137000, at *1 (M.D.N.C. Dec. 12, 2013) ("Statements in a brief are not evidence and are insufficient to justify a motion to seal, at least in the absence of a stipulation or joint representation by all parties which details the confidential nature of the information.").

20

confidentiality designations do not themselves justify sealing. (See Docket Entry 36 at 3-4.)

The specified North Carolina statutes similarly fail to satisfy the first-amendment standards for sealing court filings. See, e.g., Sides v. Kimbrough, No. 1:23cv502, 2024 WL 99490, at *10 (M.D.N.C. Jan. 9, 2024) (denying request to seal law enforcement recordings notwithstanding argument that "'North Carolina's General Statutes restrict [the] handling of the video recordings at issue'"); Anderson, 2022 WL 3586022, at *17 (rejecting argument that state statute justified sealing video subject to first-amendment right of access). Finally, the simple fact that the video footage reveals information regarding the interior of the Davidson County Detention Center does itself justify sealing, particularly when one such video remained publicly available for nearly two weeks before any party sought to seal it, see Danzy, 2022 WL 1591968, at *5. See, e.g., Sides, 2024 WL 99490, at *10 (denying motion to seal "videos [that] depict operations within the jail and the transport of [the p]laintiff through the facility," Sides v. Kimbrough, No. 1:23cv502, Docket Entry 12 at 6 (M.D.N.C. July 31, 2023)); see also Sides, 2024 WL 99490, at *4-5 (describing videos)). Accordingly, the Court will deny the request to seal the various videos.

<u>**CONCLUSION**</u>

The parties fail to justify their sealing requests.

21

**IT IS THEREFORE ORDERED** that the Sealing Motions (Docket Entries 59, 69, 74, 85, 99) are **DENIED.** The Clerk is directed to unseal Docket Entries 60 to 60-18; Docket Entries 88 to 88-1; and the video footage associated with Docket Entries 58, 68, 87, and 100.

This 28th day of May, 2026.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

22