**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SUSAN WILSON, as Administrator of the Estate of MATTHEW BRIAN WILSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:24cv219 |
| DAVIDSON COUNTY SHERIFF'S OFFICE, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on the Motion to Seal (Docket Entry 108) (the "Sealing Motion") filed by Sheriff Simmons and Davidson County (collectively, the "Defendants"). For the reasons that follow, the Court will deny the Sealing Motion.

**BACKGROUND**

Alleging various claims related to "the wrongful death of Matthew Wilson [('Wilson')] as a result of injuries sustained at the Davidson County Jail" (the "Jail") (Docket Entry 9 at 1),[1] Susan Wilson (the "Plaintiff"), Wilson's mother and administrator of his estate (see id.), sued, among others, Defendants. (See id. at 1-30.) Plaintiff thereafter moved for sanctions against Defendants for their alleged "fail[ure] to preserve over ten hours of surveillance footage depicting Wilson" (Docket Entry 50 at 2).

---

1 Docket Entry page citations utilize the CM/ECF footer's pagination.

(See Docket Entry 49 (the "Sanctions Motion") at 1-5.) The Court conducted two evidentiary hearings on Plaintiff's request for sanctions. (See Minute Entries dated Dec. 30, 2025, and Feb. 12, 2026; see also Docket Entry 110 (containing transcript of hearing on December 30, 2025).)

At the hearing on December 30, 2025, Plaintiff introduced "a disciplinary notice from the personnel file of Officer Lambeth" (Exhibit 5), "body worn camera footage depicting the booking area in the [Jail]" (Exhibit 14), and "surveillance footage from the dress out room in the [Jail]" (Exhibit 15). (Docket Entry 109 at 2.) At the hearing, Defendants moved to seal all three exhibits. (See Docket Entry 110 at 43, 110-18, 128-30.) Cautioning that much of the material "[has] been made a matter of public record" (id. at 130), the Court granted Defendants' request to temporarily seal the three exhibits and "g[a]ve [them] a chance to file a memorandum justifying [the exhibits'] continued sealing" (id. at 118; see id. at 130). Defendants thereafter moved "to seal Plaintiff's Exhibits 14 and 15 and to redact Plaintiff's Exhibit 5." (Docket Entry 108 at 1; see Docket Entry 109-1 (proposing redactions for Exhibit 5).)

## DISCUSSION

### I. Relevant Standards

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'n, Inc., 435 U.S. 589, 597 (1978). "The right of

public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." Doe v. Public Citizen, 749 F.3d 246, 265 (4th Cir. 2014) (citing Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004)). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" Id. at 265–66 (quoting Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 253 (4th Cir. 1988)). Relevant factors in this analysis include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). For its part, "the First Amendment secures a right of access 'only to particular judicial records and documents.'" Doe, 749 F.3d at 266 (quoting Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988)). Under the First Amendment, "access may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." Id. (internal quotation marks omitted).

"The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003). Importantly, "the right of public access, whether arising under the First Amendment or the common law, 'may be abrogated only in unusual circumstances.'" Doe, 749 F.3d at 266 (quoting Stone, 855 F.2d at 182). Accordingly, under either standard, the Court must evaluate the competing interests via the following approach.

First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Washington Post, 386 F.3d at 576.[2] Next, "it must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id. "Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." Id.; see also Stone, 855 F.2d at 182 ("The public's right of access to judicial records and documents may be abrogated only in unusual circumstances. The procedures mandated by *Knight* ensure that the decision to seal records will not be made lightly, and make

2 "[D]ocketing [the request] reasonably in advance of deciding the issue" satisfies this notice obligation. In re Knight, 743 F.2d at 235. Docketed in January 2026 (see Docket Entries dated Jan. 9, 2026), the Sealing Motion satisfies this requirement.

possible meaningful review of a decision to seal."). This approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in public," Cochran v. Volvo Grp. N. Am., LLC, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013). See also Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of [court] records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case. It is hardly possible to come to a reasonable conclusion on that score without knowing the facts of the case.").

The legal framework described above also applies to requests by a party to file a redacted document, i.e., a document sealed in part. See Moussaoui, 65 F. App'x at 889 ("As to those documents subject to a right of access, [the court] must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part."); see also Bethesda Softworks, LLC v. Interplay Ent. Corp., Civ. Action No. 09-2357, 2010 WL 3781660, at *9-10 (D. Md. Sept. 23, 2010) (treating motion to redact transcript as motion to seal). "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." Moussaoui, 65 F. App'x at 888 (citing United States

v. Pelton, 696 F. Supp. 156, 159 n. 2 (D. Md. 1986) (noting that court would "carefully compare the redacted version [of a transcript] to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary")).

Moreover, "[w]hen a request to seal pertains to publicly available information, the proponent of that request faces an uphill battle," Danzy v. Coloplast Corp., No. 1:19cv1017, 2022 WL 1591968, at *5 (M.D.N.C. May 19, 2022) (collecting cases denying retroactive sealing requests for publicly available material), as, "once announced to the world, the information lost its secret characteristic," Washington Post, 386 F.3d at 579 (brackets and internal quotation marks omitted). See, e.g., Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08cv918, 2010 WL 1418312, at *10 (M.D.N.C. Apr. 2, 2010) (explaining that, if information was previously disclosed, "any restriction on public access to that same information in this case would serve no purpose"); see also United States v. Loughner, 769 F. Supp. 2d 1188, 1196-97 (D. Ariz. 2011) (noting, in granting motion to unseal, that "neither party has made a convincing case that preventing the possible republication of information that has already become a matter of public knowledge is 'strictly and inescapably necessary' to protect a compelling interest").

## **II. Analysis**[3]

Defendants first ask to seal, in its entirety, Exhibit 14, a fifty-three-second clip of body-worn camera footage from an officer entering the Jail's booking area and conversing briefly with other officers in that area. (See Ex. 14; see also Docket Entry 109 at 3-4 (describing footage).) Arguing that "[b]lueprints of detention centers are not public record as there is a compelling interest in keeping the layout of detention centers confidential and secure," Defendants assert that "[d]isclosure of this footage to the public compromises the safety and security of the [Jail]." (Docket Entry 109 at 4; see id. ("If the public were given access to the location of security cameras, the layout of the Detention facility, and the specifics of the operations procedures during the intake process, the facility, officers, and inmates would all be placed at risk.").) Defendants further ask to seal, in its entirety, Exhibit 15, a roughly seven-minute video showing the rear portion of the Jail's dress-out room and the interactions between Wilson and certain Jail personnel as Wilson changed into a suicide smock. (See Ex. 15; see also Docket Entry 109 at 5 (describing footage).) As Defendants acknowledge, "[t]he video only depicts Wilson changing his clothes and his interaction with officers in the dress

3 The Court need not resolve whether the common-law or first-amendment right of access applies to the Exhibits, as (for the reasons explained herein) Defendants have not established the propriety of sealing under even the lower common-law standard.

out room." (Docket Entry 109 at 5.) Nevertheless, Defendants assert that the Court should seal this footage because (i) "[Jail] surveillance footage is traditionally considered confidential under North Carolina General Statute[ Section ]132-1.4A" (id. at 5), (ii) the substance of the video purportedly lacks relevance to the Sanctions Motion (see id. at 5-6), and (iii) "[t]he video was produced under a protective order and marked as confidential" (id. at 6). None of these arguments justify sealing the videos.

To begin, Exhibit 14 in no manner resembles Jail blueprints. (See Ex. 14.) Next, the referenced North Carolina statute provides procedures for state law enforcement officials' disclosure and release of law enforcement recordings; it does not govern subsequent use of those recordings as evidence in a federal proceeding. See N.C. Gen. Stat. § 132-1.4A. Additionally, Plaintiff relied on the contents and not just the existence of Exhibit 15 in pursuing the Sanctions Motion. (See, e.g., Docket Entry 110 at 117 ("The real important [videos] in this case that [Plaintiff's counsel] wanted to definitely get into evidence would be . . . the dress-out video because [counsel] think[s] the Court's going to see, wait a minute. Where's the timestamp in this video? . . . .").) Further, as the Court has explained in resolving other sealing motions in this matter, Defendants' protective-order arguments lack merit, "as the Protective Order explicitly allows the parties to present confidential material to the Court and

recognizes that such confidentiality designations do not themselves justify sealing." (Docket Entry 118 at 20-21 (citing Docket Entry 36 at 3-4).)

Moreover, Plaintiff played these exhibits in open court during the evidentiary hearing on December 30, 2025. (See, e.g., Docket Entry 110 at 125-27.) However, Defendants do not address the effect of this public disclosure on their sealing request, let alone justify retaining the exhibits under seal after public disclosure of their contents in December. (See Docket Entry 109 at 3-6.) As such, Defendants have not justified sealing Exhibits 14 and 15. See, e.g., Moussaoui, 65 F. App'x at 889 ("The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access."); see also Washington Post, 386 F.3d at 579 ("[O]nce announced to the world, the information lost its secret characteristic." (internal quotation marks omitted)).

Defendants also seek to redact Exhibit 5. (See Docket Entry 108 at 1-2.) According to Defendants:

> Plaintiff's Exhibit 5 was entitled "Employee Warning Notice" and was an item from Officer Lambeth's personnel file. The document contains details of an interaction between Officer Lambeth and his supervisors resulting in a first warning for violation of agency policies. During the hearing, Plaintiff's counsel asked some questions about the document and those questions and subsequent answers are now public record, so it would not be appropriate for the entire Exhibit to be sealed. Instead, Defendants request that portions of the Exhibit be redacted. Namely, the portions that were not addressed in open [c]ourt during the hearing and that

> have bearing on Officer Lambeth's employment. Defendants have attached as an Exhibit the proposed redactions to Plaintiff's Exhibit 5. Plaintiff's use of this Exhibit was to show that Captain Rabon had viewed at least some of the surveillance footage on November 17, 2022, the date of this meeting. The items Defendants propose to redact have no relation to that fact and instead relate to the substance of the meeting and any subsequent action as a result of the meeting.

(Docket Entry 109 at 6; see also Docket Entry 109-1 (redacting portions of Exhibit 5).)

However, the proposed redactions include information disclosed at the evidentiary hearing, including that Officer Lambeth received "the write-up for" (Docket Entry 110 at 44) "[f]ailing to inquire physical check and welfare of [Wilson's] well-being" (id.; see also Docket Entry 114 at 6 (quoting testimony in public brief)) when "[Wilson] was face down unresponsive" in his cell (Docket Entry 110 at 45). The public record also discloses the specific punishment that Officer Lambeth received for violating Jail policy (see Docket Entry 114-1 at 8), information that Defendants propose redacting from Exhibit 5 (see Docket Entry 109-1 at 1-2). Moreover, the video of this incident — the description of which Defendants propose redacting from Exhibit 5 (see id. at 1) — remains publicly available (see Docket Entry 100, Ex. A) and the Court's publicly available opinions contain detailed descriptions of this incident (see, e.g., Docket Entry 119 at 19-20; Docket Entry 125 at 17-18). Under these circumstances, Defendants fail to justify their proposed redactions.

## CONCLUSION

Defendants fail to justify their sealing requests.

**IT IS THEREFORE ORDERED** that the Sealing Motion (Docket Entry 108) is **DENIED.** The Clerk is directed to unseal Exhibits 5, 14, and 15 from the evidentiary hearing on December 30, 2025.

This 22nd day of September, 2026.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**