IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SUSAN WILSON,<br>as Administrator of the Estate of<br>MATTHEW BRIAN WILSON,<br><br>Plaintiff,<br><br>v.<br><br>DAVIDSON COUNTY<br>SHERIFF'S OFFICE, *et al.*,<br><br>Defendants. | 1:24-cv-219 |

**ORDER**

This matter is before the Court on a motion for summary judgment filed by Davidson County, Sheriff Richie T. Simmons, Officer Logan Peters, and Officer Jonathan Lambeth ("Jail Defendants"). Dkts. 72-73. The Magistrate Judge issued a 61-page Memorandum Opinion and Recommendation granting the Jail Defendants' motion. Dkt. 125 ("Recommendation"). After receiving a time extension, Plaintiff objected to the Jail Recommendation. Dkt. 130 at 2. The Jail Defendants responded. Dkt. 134. The Court now adopts the Recommendation in full.

This Court must "make a *de novo* determination of those portions of the [Magistrate Judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,] . . . or

recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). Here, Plaintiff has objected the Recommendation on seven grounds. *See* Dkt. 130 at 2.

Reviewing *de novo*, the Court now adopts the Recommendation granting the Jail Defendants' motion for summary judgment. The Jail Defendants moved for summary judgment under Federal Rule of Civil Procedure 56 arguing they are entitled to judgment as a matter of law on Plaintiff's federal Section 1983 claims and state negligence claims, all stemming from the undisputably tragic in-custody death of Mr. Wilson. Dkts. 72, 73. After conducting *de novo* review of the record and issues, the Court adopts the Recommendation in full.

## DISCUSSION

The Court addresses each of Plaintiff's objections to the Recommendation in turn.

### I. The Recommendation Correctly Dismisses the Deliberate Indifference Claim Against Officer Lambeth.

Plaintiff first objects to the recommendation that her Section 1983 deliberate indifference claim against Officer Lambeth be dismissed upon a finding of qualified immunity. Dkt. 130 at 2 ¶ A. This is her most salient objection, and the Court has not come to its decision lightly. The Court has thoroughly reviewed the record, including the video showing Mr. Wilson in distress and ultimately collapsing on the floor, Dkt. 100 Ex. A, and the contemporaneous video of Officers Lambeth and Smith in the control tower, Dkt. 100 Ex. B. But, viewing the record in the light most favorable to Plaintiff, *see Henry v. Purnell*,

652 F.3d 524, 531 (4th Cir. 2011) (en banc), the Court still finds that Plaintiff has not demonstrated a genuine issue of material fact as to whether Officer Lambert knew or should have known that Mr. Wilson needed medical aid when he saw him lying on the cell floor.

Notably, the legal standard for deliberate indifference claims is high. "Deliberate indifference is a very high standard that is generally only satisfied by government conduct that shocks the conscience." *Hearn v. Lancaster County*, 566 F. App'x 231, 236 (4th Cir. 2014) (citing *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004)). Mere negligence or even civil recklessness is not enough. *Short v. Hartman*, 87 F.4th 593, 611-12 (4th Cir. 2023); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Rather, it requires "proof of a callous disregard for a serious medical need." *Sorrick v. Manning*, No. 16-0709, 2017 WL 3668755, at *9 (D. Md. Aug. 22, 2017), *aff'd*, 717 F. App'x 300 (4th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

The Fourth Circuit's decision in *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023), changed the legal standard for deliberate indifference claims involving pre-trial detainees like Mr. Wilson. The Court agrees that the qualified immunity inquiry must happen under the legal standard for deliberate indifference that prevailed in 2022—the year of the events in this case—not under the new *Short* standard. *See* Dkt. 125 at 35-36; *King v. Blackwood*, 180 F.4th 562, 566-67, 570 (4th Cir. 2026). But, regardless, the Court concludes that Plaintiff's claim fails under either standard.

The pre-*Short* standard has an objective prong and a subjective prong. The objective prong requires showing Mr. Wilson was suffering from "[a]n objectively serious medical need" such that "even a lay person would easily recognize the necessity for a doctor's attention." *King*, 180 F.4th at 570. The subjective prong requires showing that Officer Lambeth had "a sufficiently culpable state of mind," *Jackson v. Bush*, 181 F.4th 407, 414 (4th Cir. 2026),[1] meaning he "actually knew of and ignored [Mr. Wilson's] serious need for medical care," *Parrish*, 372 F.3d at 302. *Short*, in contrast, abrogated the subjective prong. Now, all that is left is the objective prong, which requires a plaintiff to show that the defendant "failed to act 'in the face of an unjustifiably high risk of harm that is . . . so obvious that it should be known.'" 87 F.4th at 611 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).

Having reviewed the record, the Court finds that, when Officer Lambeth checked on Mr. Wilson and found him lying on the floor, the fact that Mr. Wilson needed medical aid was not apparent enough to satisfy either the subjective prong or the objective prong of the deliberate indifference inquiry.

Under the subjective prong, Plaintiff must show that Officer Lambeth had actual knowledge that Mr. Wilson needed medical aid. She can show this through direct

[1] Despite being a 2026 case, *Jackson v. Bush* involved events that occurred between 2017 and 2020, so it applied the pre-*Short* subjective test for deliberate indifference. *See* 181 F.4th 407, 412-15, (4th Cir. 2026).

evidence that Officer Lambeth knew Mr. Wilson needed aid, such as by Officer Lambeth's statement to that effect. But there is no such statement here; rather, Officer Lambeth declared under oath that he thought Mr. Wilson was asleep, breathing, and not in need of aid. Dkt. 73-18 ¶¶ 13-15.

It is not enough to say that Officer Lambeth knew Mr. Wilson was suicidal, and that he later saw him lying on the floor. Rather, to show actual knowledge, the evidence must show that Officer Lambeth put two and two together—that he realized Mr. Wilson was lying on the floor in need of medical aid and deliberately chose to ignore his condition. *Parrish*, 372 F.3d at 303 ("[T]o cross the threshold from mere negligence to conscience-shocking deliberate indifference, the officers not only must recognize the facts giving rise to the risk, but they also must draw the additional causal inference."); *accord Bush*, 181 F.4th at 414 (quoting *Farmer*, 511 U.S. at 837).

But Officer Lambeth's unrebutted testimony—that he thought Mr. Wilson had passed out from exhaustion—shows the opposite: Officer Lambeth had not put two and two together. Plaintiff did not submit any other testimony—such as testimony from Officer Smith or a nearby inmate—to rebut Officer Lambeth's testimony as to his state of mind. So as far as direct evidence goes, there is no factual dispute to survive summary judgment.

Alternatively, Plaintiff can show actual knowledge through circumstantial evidence. *Makdessi v. Fields*, 716 F. App'x 148, 153 (4th Cir. 2017) ("An inmate plaintiff may

demonstrate deliberate indifference through direct or circumstantial evidence."). To do so, she must show that Mr. Wilson's need for aid was "so obvious" that Officer Lambeth must have had actual knowledge of the need "because he could not have failed to know of it." *Parrish*, 372 F.3d at 303. But based on the video, Mr. Wilson's need for prompt and serious medical aid was not obvious enough to provide the circumstantial evidence necessary to survive summary judgment.

The video shows that Mr. Wilson's need for medical aid was not immediately obvious to anyone who checked on him. The video shows Mr. Wilson swallowing the torn-up milk carton and continuing to scream and pace frantically for several minutes, intermittently laying on the floor and standing up. *See* Dkt. 100 Ex. A [12:13:40-12:21:00]. He evidently ingested the carton and only later regurgitated it and choked. He collapsed to the floor, writhed for a moment, then laid mostly—but not completely—still. *Id.* [12:20:55-12:23:30]. Another inmate walked by him twice but paid him no mind. *Id.* [12:21:47-12:21:54], [12:22:56-12:23:00]. Besides the fact that Officer Lambeth was in the control tower at this time, there is no evidence that he saw Mr. Wilson stagger and fall.[2] After two minutes on the floor, Officer Lambeth arrived for his rounds. *Id.* [12:23:28].

---

[2] Plaintiff cannot create a genuine issue of material fact by speculating that Officer Lambeth saw Mr. Wilson in distress from the control tower. *See Othentec Ltd. v. Phelan*, 526 F.3d 135, 142 (4th Cir. 2008) ("Appellants' allegations, speculation, and inference are not enough to survive summary judgment."). Moreover, neither Officer Lambeth's nor Officer Smith's body language or demeanor on the control tower video suggests they were aware of Mr. Wilson's distress. *See* Dkt. 100 Ex. B.

While Officer Lambeth was by the cell, Mr. Wilson's chest heaved once. *Id.* at [12:23:55]. Officer Lambeth looked at Mr. Wilson for a few seconds, spoke with the inmate in the cell next door, and looked at Mr. Wilson again as he left. *Id.* [12:23:30-12:24:39]. An inmate then peered at Mr. Wilson through the bars but seemingly walked away saying nothing. *Id.* [12:26:30]. Nobody, it seems, was raising alarm that Mr. Wilson needed medical aid. Even when Officer Smith arrived,[3] he had to stare at Mr. Wilson for ten seconds under a flashlight to decide something was wrong and reach for his radio. *Id.* [12:27:30-12:27:40]. And after radioing, he did not hurriedly enter the cell but instead trained the flashlight on Mr. Wilson for twenty more seconds, pausing to talk to onlooking inmates. *Id.* [12:27:49-12:28:11]. And even after entering the cell, it took two officers forty seconds of looking at Mr. Wilson, checking his pulse, and turning him over to determine that he needed CPR. *Id.* [12:28:49-12:29:29].

On these facts, the Court cannot say that Mr. Wilson's need for medical aid was "so obvious" that Officer Lambeth must have had actual knowledge of the need "because he could not have failed to know of it." *Parrish*, 372 F.3d at 303. Upon a cursory inspection by anyone who looked, Mr. Wilson appeared to be asleep. True, Officer Lambeth could have taken the additional precaution of trying to rouse Mr. Wilson to confirm he

[3] In her Objections, Plaintiff raises the fact that Officer Smith's report described Mr. Wilson as "looking to be unconscious from the tower." Dkt. 130 at 11. Yet Officer Smith left to check on Mr. Wilson in no hurry: he did not jog, preemptively radio for backup, or order Officer Lambeth, his subordinate, to follow. Dkt. 100 Ex. B [12:26:32-12:27:03].

was all right. But "the question in deliberate indifference cases is not whether the [officer] could have taken additional precautions . . . with the benefit of 20/20 hindsight." *Id.* at 309. "And an officer's failure to appreciate a warning sign is, at most, negligent and not sufficient to establish deliberate indifference." *Hearn*, 566 F. App'x at 239.

For similar reasons, Plaintiff has also failed to satisfy the objective prong as it existed pre-*Short*, or as it survived post-*Short*. Mr. Wilson's need for aid was not "so obvious that [Officer Lambeth] should [have] known" of his need. *Short*, 87 F.4th at 611. Again, the "should have known" standard is higher than negligence or even civil recklessness. *Id.* at 611-12; *Lightsey*, 775 F.3d at 178. The fact that Officer Smith and the passing inmate did not immediately raise alarm shows that Mr. Wilson's need for aid was not objectively apparent under "the high and exacting deliberate indifference standard." *Kirtman v. Helbig*, No. 4:16-cv-2839, 2018 WL 3611344, at *2 (D.S.C. July 27, 2018), *aff'd*, 764 F. App'x 288 (4th Cir. 2019).

This result is consistent with another pre-*Short* deliberate indifference case with similar facts. In *Iko v. Galley*, an officer was tasked with monitoring a handcuffed and recently pepper-sprayed inmate at 15-minute intervals. No. 2004-3731, 2007 WL 9758426, at *3 (D. Md. Sept. 17, 2007), *aff'd in part, dismissed in part sub nom. Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008) (not disturbing disposition of claim for officer who stood watch). Over a 45-minute period, the officer checked on him "six times, for five to ten seconds at a time, and noted that [he] had not moved at all." *Id.* Only after 45 minutes of stillness did he

call for help. *Id.* Officers then entered the cell and found him unresponsive. *Id.* One officer observed the inmate "was lying in a 'very odd' position." *Id*. The medical examiner determined he had asphyxiated on the pepper spray (he was also wearing a spit mask). *Id.* at *4. But despite these facts, the court found the officer who stood watch did not "consciously disregard" the risk that the inmate needed medical aid, and it granted summary judgment. *Id.* at *17.

In short, Officer Lambeth did not "disregard an excessive risk to [Mr. Wilson's] health or safety," *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001), especially because it was not obvious how Mr. Wilson—naked in a practically empty cell—could have harmed himself. "It is not enough that [Officer Lambeth] *should have* recognized" that Mr. Wilson had choked and needed help. *Shreve*, 535 F.3d at 241. Rather, Plaintiff must show Officer Lambeth *actually knew* that Mr. Wilson needed medical aid because his need was glaringly obvious. Unfortunately, it was not. At worst, Officer Lambeth's alleged inattention looks like negligence, which is not enough. *Short*, 87 F.4th at 611-12 ("[I]t is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee.").

Because Plaintiff has not raised a triable issue as to whether Officer Lambeth actually knew, or objectively should have known, Mr. Wilson needed aid, the Court adopts the Recommendation's finding of qualified immunity and dismissal of the deliberate indifference claim against Officer Lambeth. Dkt. 125 at 42-49.

## II. Plaintiff's Remaining Objections Are Overruled.

The Court also adopts the Recommendation's other findings. Plaintiff's second objection regards the recommended dismissal of her excessive force claim against Officer Peters for pepper spraying Mr. Wilson. Dkt. 130 at 2 ¶ B. The Court agrees with the Magistrate Judge's conclusion that this use of force was objectively reasonable under the circumstances. Dkt. 125 at 50-56.

Plaintiff next objects to the rejection of her attempt to bring a deliberate indifference claim against Officer Peters. Dkt. 130 at 2 ¶ C. The Court agrees that Plaintiff failed to properly plead this claim in the amended complaint, *see* Dkt. 9 at 21-22, and that the claim would fail on the merits. Dkt. 125 at 49-50. Even if Officer Peters were aware of a "general risk" to Mr. Wilson's health from his distressed state, that is not enough for deliberate indifference. *See Parrish*, 372 F.3d at 306.

Plaintiff next objects to the recommended dismissal of her *Monell* claim against Sheriff Simmons for his alleged no-transfer policy for suicidal but uninjured detainees. Dkt. 130 at 2 ¶ D. The Court agrees that Plaintiff has consistently attributed the policy to IMS Correctional Healthcare, LLC, not Sheriff Simmons. And the Court agrees that even if the policy belonged to Sheriff Simmons, this Court has already decided that it did not proximately cause Mr. Wilson's death, which is required for a *Monell* claim. Dkt. 125 at 39-42; *see also* Dkt. 119 at 46-48, *adopted* Dkt. 124 (finding Mr. Wilson's unilateral conduct attenuated the connection between the alleged no-transfer policy and his death).

Plaintiff next objects to the recommended dismissal of her state negligence claims. The Court agrees with the Recommendation's reasoning here, including its finding that public official immunity shields Defendants given the lack of evidence of malice. Dkt. 125 at 57-60. Because the Court finds that Officers Lambeth and Peters were not deliberately indifferent, they *a fortiori* lacked malice. *See Doe v. Qually*, No. 5:20-cv-523, 2021 WL 2546456, at *11 (E.D.N.C. June 21, 2021).

Finally, Plaintiff objects to the recommended dismissal of her conditions-of-confinement claim and request for punitive damages. Dkt. 130 at 2 ¶¶ F-G. The Court agrees with the Recommendation that Plaintiff's claim and request rise and fall with her substantive claims, which all fail. Dkt. 125 at 60-61.

It is **THEREFORE ORDERED** that the Plaintiff's Objections, Dkt. 130, are **OVERRULED** and the Recommendation, Dkt. 125, is **ADOPTED IN FULL**. The Jail Defendants' Motion for Summary Judgment, Dkt. 72, is **GRANTED**. The Jail Defendants are therefore **DISMISSED** from this action.

A Judgment will be entered contemporaneously with this Order.

This the 30th day of September, 2026.

LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE